UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
NORTHERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>VOYTEK CUSTOM BUILT RESIDENCES, )<br>INC., 1954-56 N. WILMOT, LLC, SAM )<br>LOPEZ, JR., individually and d/b/a )<br>LOW COST BUILDERS, INC. )<br>)<br>Defendants. ) | Case No. 1:08-CV-3975<br><br>ASSIGNED JUDGE:<br>REBECCA L. PALLMEYER<br><br>MAGISTRATE JUDGE: |

## DEFENDANT 1954-56 N. WILMOT, LLC AND BRIGHTON DEVELOPMENT, LLC'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME Defendants, 1954-56 N.WILMOT, LLC, AND BRIGHTON DEVELOPMENT, LLC, by and through their attorneys, BARONE & JENKINS, P.C., and for their answer to Plaintiff's Complaint for Declaratory Judgment, state as follows:

### JURISDICTION

1. Plaintiff Nautilus is an Arizona insurance company, with its principal place of business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

**ANSWER:** Admit.

2. Defendant Voytek is an Illinois corporation, with its principal place of business located at 1000 N. Milwaukee Ave., Ste. 403, Chicago, IL 60622.

**ANSWER:** Admit.

3. Defendant 1954-56 N. Wilmot is an Illinois corporation, with its principal place of business located at 306 Midwest Club Parkway, Oak Brook, IL 60523.

**ANSWER:** Admit.

4. Defendant Brighton is an Illinois corporation, with its principal place of business located at 306 Midwest Club Parkway, Oak Brook, IL 60523-2527.

**ANSWER:** Admit.

5. Defendant Low Cost Builders is a dissolved Illinois corporation that was solely owned by Lopez and had its principal place of business in Justice, Illinois.

**ANSWER:** Admit.

6. Defendant Lopez is an Illinois citizen, whose primary residence is located in Illinois.

**ANSWER:** Admit.

7. At all relevant times, after Low Cost Builders was dissolved, Lopez continued doing business under the name Low Cost Builders.

**ANSWER:** Defendants lack sufficient knowledge upon which to form a belief as to the truth or falsity of the allegations in Paragraph 7 and, therefore, neither admit nor deny those allegations.

8. Defendants 1954-56 N. Wilmot and Brighton have claimed damages in excess of $215,823.06.

**ANSWER:** Admit.

9. This Court has jurisdiction over this matter 28 U.S.C. § 1332 based on diversity of citizenship of the parties and the matter in controversy exceeds $75,000.

**ANSWER:** Admit.

### 1954-56 N. WILMOT LAWSUIT

10. On March 6, 2007, a lawsuit was filed in the Circuit Court of Cook County, Illinois under the caption, *1954-56 N. Wilmot, LLC and Brighton Development, LLC v. Voytek Custom Built Residences, Inc.,* Case No. 2007 L 002347 (the "1954-56 N. Wilmot Lawsuit"). A true and correct copy of the Complaint filed in the 1954-56 N. Wilmot Lawsuit is attached hereto as Exhibit "A".

**ANSWER:** Admit.

11. Voytek was served in the 1954-56 N. Wilmot Lawsuit on or around March 6, 2007.

**ANSWER:** Admit.

12. Count I of the 1954-56 N. Wilmot Lawsuit includes the following allegations:

   a. At all times relevant, and currently, Wilmot is the owner of Property. . commonly known as: 1954-56 North Wilmot, Chicago, Illinois.

   b. On or about December 12 of 2005, Brighton and Voytek entered into a written contract ("Contract") for good and valuable consideration, whereby Voytek was to provide material, services and labor to construct a residential condominium building on the Property, and otherwise improve the Premises (the "Work") and Brighton was to pay Voytek for performance of the Work.

   c. Notwithstanding its contractual obligations, Voytek failed to perform the Work in accordance with the requirements and specifications contained in the Contract documents. Specifically, much of the Work that was performed by Voytek was deficient and not performed in a good and workmanlike manner in breach of the Contract. Said improper and deficient work includes the following:

   1. Improperly pouring and constructing the building's foundation without inclusion of support rebar and dowels as specified by the Contract documents which necessitated the removal and replacement of the entire foundation;

   2. Improperly pouring and constructing the garage footings without inclusion of support rebar and dowels as specified by the Contract documents which necessitated the removal and replacement of the entire garage footing;

   3. Improperly constructing site retaining walls which resulted in significant erosion and damage to neighboring property and an adjacent alley which necessitated significant repair and replacement of concrete walkways and patios existing on the neighboring property;

   4. Said improper construction of the site retaining walls also resulted in excessive water entering the foundation which resulted in further delays in dewatering the site and remediation of the soil so that a new foundation could be constructed;

      5.      Improperly failing to remove significant amounts of construction waste and rubbish left on the site which had to be hauled away by the contractor hired to complete the Work;

      6.      Improperly failing to close sewer lines on the construction site, and

      7.      Improper alley cuts.

   d.   The Contract was terminated by Brighton on July 21, 2006, pursuant to paragraph 19.2.2 due to Voytek's persistent and repeated failure to supply enough properly skilled workers and proper materials to perform the Work in a good and workmanlike mariner [sic], and based upon Voytek's substantial breach of contract by failing to correct deficient work as required in paragraph 17.1 of the Contract.

   e.   As a result of the numerous deficiencies existing in the Work performed by Voytek under the Contract, all of the Work performed by Voytek required replacement. As a direct result, Plaintiffs had to engage other contractors to repair and/or replace said deficiencies. Thus, as a result of Voytek's breach, Plaintiffs have suffered damages of at least $215,823.06.

**ANSWER:** Defendants admit that Paragraph 12 generally describes the claims in the 1954-56 N. Wilmot Lawsuit. Defendants deny that Paragraph 12 constitutes a full and complete statement of the claims made by the plaintiffs in that case, and, therefore, deny those allegations.

13.   On March 6, 2008, Voytek filed a Third-Party Complaint against Lopez, individually and d/b/a Low Cost Builders. A true and correct copy of the Third-Party Complaint is attached hereto as Exhibit B.

**ANSWER:**   Admit.

14.   Lopez was served on or around March 1, 2008.

**ANSWER:**   Admit.

15.   The Third Party Complaint includes the following allegations:

   a.   In the Fall of 2005, Sam Lopez, on behalf of Low Cost Builders, entered in to an oral agreement with Voytek for the excavation and foundation work at the premises. Voytek agreed to pay Low Cost Builders $80,000 for its construction services per the oral agreement. As part of its agreement with Voytek, Lopez and Low Cost Builders agreed to perform its construction services in good and workmanlike manner. Implicit in its agreement, Lopez and Low Cost builders agreed to follow the construction

4

          drawings in performance of its work. Further, Low Cost Builders provided Voytek with a certificate of insurance to cover claims for damage caused by its construction work.

b.     Shortly after pouring the footings and foundation walls, CE Anderson Associates, the Plaintiffs' engineering firm, determined that Low Cot Builders failed to pour the foundation and footings in accordance with the construction drawings.

c.     On April 28, 2006, the architect overseeing the construction of the premises rejected the foundation poured by Low Cost Builders on the grounds that the foundation was improperly poured. As such, Voytek was required to remove and replace the improperly poured foundation.

d.     On May 8, 2006, Low Cost Builders submitted a proposal for the remediation work. The new proposal stated that Lopez and Low Cost Builders would do the following:

    1.     "Demo and haul away the existing foundation walls and footing. (Garage not included).

    2.     Re-Excavate, according to new, updated drawing.

    3.     Place footing and foundation as per new or revised plans with all details on foundation sheet or section drawings pertaining to foundation plan.

    4.     Backfill foundation after inspected and approved by Greg. (General Contractor)

    5.     All placement of concrete must be inspected and approved by Greg. (General Contractor)"

e.     While performing its demolition work, Low Cost Builders failed to adequately shore the retaining walls for the premises. As a result, the Plaintiffs allege that the neighbor's property was damaged. In particular, the Plaintiffs allege that as a result of *Low* Cost Builders' failure to shore the jobsite, the neighbor's sidewalk began to pull away from the building and created a gap between the foundation and sidewalk. The Plaintiffs further allege that this gap allowed excessive amounts of water to enter the neighbor's foundation and resulted in significant damage.

f.     In addition to the alleged damage to the neighbor's property, Low Cost Builders improperly cut the alleys abutting the premises. As a result of this improper alley cut, Voytek was issued a citation on June 26, 2006, by the City of Chicago. The Plaintiffs allege that Low Cost Builders' failure to

5

    adequately shore the alley ways caused significant damage property damage to the public ways.

  f. [sic] Low Cost Builders breached its contract with Voytek because it Performed its work in a defective and negligent manner with regards to the foundation, shorings, and alley cuts.

  g. As a direct and proximate result of Low Cost Builders' breach of contract, Voytek was terminated from its general contracting agreement and is now being sued for $215,823.06 with respect to defective and negligent construction work performed by Low Cost Builders.

**ANSWER:** Defendants admit that the allegations contained within Plaintiff's Paragraph 15 generally describe Voytek's Third Party Complaint against Lopez and Low Cost Builders. Defendants deny that Paragraph 15 constitutes a full and complete statement of the claims made by Voytek in that case, and, therefore, deny those allegations.

  16. Nautilus issued Policy No. NC 428079 to Low Cost Builders (the "Nautilus Policy"). A true and correct copy of the Nautilus Policy is attached hereto as Exhibit C.

**ANSWER:** Admit.

  17. The Nautilus Policy is effective from March 14, 2005 through March 14, 2006.

**ANSWER:** Defendants admit that the policy attached to Plaintiff's complaint appears to have a policy period of March 14, 2005 to March 14, 2006.

  18. The policy limits are $1,000,000 Each Occurrence, $1,000,000 Products/Completed Operations Aggregate and $2,000,000 General Aggregate.

**ANSWER:** Defendants admit that the policy attached to Plaintiff's complaint appears to have the policy limits listed in Paragraph 18.

  19. The Nautilus Policy contains the following insuring agreement:

  1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right

6

            and duty to defend the insured against any "suit" seeking those damages.

            However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suite" that may result . . .

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "properly damage" [sic] is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period;

**ANSWER:** Defendants admit that the allegations contained within Plaintiff's Paragraph 19 generally describe a certain provision of the Nautilus policy. Defendants deny that Paragraph 19 fully or completely alleges all provisions of the policy.

    20.    The Nautilus Policy contains the following definition:

    17.    "Property damage" means:

        a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**ANSWER:** Defendants admit that allegations contained within Plaintiff's Paragraph 20 generally describe certain provisions of the Nautilus policy. Defendants deny that Paragraph 20 fully or completely alleges all provisions of the policy.

    21.    The Nautilus Policy contains the following exclusion:

CONTRACTORS SPECIAL CONDITIONS

7

DEMOLITION AND BUILDING WRECKING CONDITIONAL EXCLUSION

The following exclusion is added to Paragraph 2. Exclusions under SECTION I – COVERAGES, BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to "bodily injury" or "property damage" for demolition or wrecking of buildings or structures conducted by you unless coverage was purchased for **"Wrecking – buildings or structures"** and designated on the Declarations:

The following additional exclusions apply to demolition or wrecking operations:

(1) This insurances does not apply to "bodily injury" or "property damage" arising out of:

    (a) The use of cranes, ball and chain, or similar apparatus; or

    (b) The demolition or wrecking of any building or structure that has an original height in excess of three stories;

(2) This insurance does not apply to "property damage":

    (a) Of any abutting wall, adjoining wall, common or party wall; or

    (b) Included within the "explosion hazard, "the "collapse hazard" or the "underground property damage hazard" unless coverage is purchased and entered as a covered hazard on the Declarations.

The following definitions are added to the DEFINITIONS Section:

\* \* \*

**"Collapse hazard"** means to break down suddenly or give way; and includes "structural property damage" and any resulting "property damage" to any other property at any time.

**"Structural property damage"** means the collapse of or structural injury to any building or structure due to:

(1) Grading or land, excavating, burrowing, filling, back-filling, tunneling, pile driving, cofferdam work or caisson work; or

(2) Moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

**ANSWER:** Defendants admit that allegations contained within Plaintiff's Paragraph 21 generally describe certain provisions of the Nautilus policy. Defendants deny that Paragraph 21 fully or completely alleges all provisions of the policy.

## GROUNDS FOR DECLARATORY JUDGMENT

22. Coverage under the Nautilus Policy Insuring Agreement is contingent on "property damage" occurring during the policy period.

**ANSWER:** Defendants deny that the allegations in Paragraph 22 accurately set forth all conditions of coverage on the policy.

23. The Nautilus Policy incepted on March 14, 2005 and ran for a single year through March 14, 2006.

**ANSWER:** Defendants admit that the policy attached to Plaintiff's complaint appears to have a policy period from March 14, 2005 through March 14, 2006.

24. As reflected in the Third-Party Complaint in the 1954-56 N. Wilmot Lawsuit, the first instance of alleged property damage occurred on or after May 25, 2006.

**ANSWER:** Defendants lack sufficient knowledge upon which to form a belief as to the truth or falsity of the allegations in Paragraph 24 and, therefore, neither admit nor deny those allegations.

25. The absence of any property damage occurring during the Nautilus Policy period precludes any actual or potential coverage for the claims stated against Lopez or Low Cost Builders in the 1954-56 N. Wilmot Lawsuit.

**ANSWER:** Deny.

26. Additionally, the Complaint and Third-Party Complaint in the 1954-56 N. Wilmot Lawsuit allege the existence of property damage as a result of the "demolition or wrecking of buildings or structures: and "improper alley cuts."

**ANSWER:** Deny.

27. The "Demolition and Building Wrecking Conditional Exclusion" applies to exclude any coverage or potential coverage for Lopez or Low Cost builders in the 1954-56 N. Wilmot Lawsuit.

**ANSWER:** Deny.

28. Nautilus has no duty to defend Lopez or Low Cost Builders in connection with the 1954-56 N. Wilmot Lawsuit.

**ANSWER:** Deny.

WHEREFORE, Defendants 1954-56 N. Wilmot, LLC and Brighton Development, LLC pray this Honorable Court enter an Order in their favor against Plaintiffs, denying the relief sought by Plaintiff in Plaintiff's Complaint, and any additional relief deemed equitable and just by this Court.

Respectfully submitted,

**1954-56 N. WILMOT, LLC AND BRIGHTON DEVELOPMENT, LLC**

_____
One of Defendants' Attorneys

David M. Jenkins
Patrick J. Loftus
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrace, Illinois 60181
Tel. No. 630.472.0037
Fax No. 630.472.0864
Attorney No: 34622